# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**DWAYNE P. BUTLER**                                      **CIVIL ACTION**

**VERSUS**                                                       **NO.  12-900**

**N. BURL CAIN, WARDEN**                          **SECTION "H"(2)**

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  See 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

## I.     STATE COURT PROCEDURAL BACKGROUND

The petitioner, Dwayne P. Butler, is a convicted inmate currently incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  On October 19, 2006, Butler was charged by bill of information in Jefferson Parish with two counts of armed robbery and

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

[2]Rec. Doc. No. 4.

one count of possession of a weapon by a previously convicted felon.[3] The Louisiana Fifth Circuit Court of Appeal summarized the facts of the case as determined at trial in relevant part as follows:

> On August 22, 2006, at approximately 1:30 p.m., Debra Lindsey ("Ms. Lindsey") went into the Rent-A-Center in Marrero to make a payment on a bill. An individual wearing a white T-shirt and jeans, later identified as Butler, came in behind her. Lakesha Smith ("Ms. Smith"), an employee of Rent-A-Center, assumed Ms. Lindsey and Butler were together, but discovered shortly afterward that they were not. Ms. Lindsey paid in cash and then turned around to leave. Butler followed Ms. Lindsey and robbed her. Butler told her, "Let me get that out you." After Ms. Lindsey saw that Butler had a gun, she gave him all the money she had in her pocket, which she believed was over $200.
>
> Butler returned to the counter, showed Ms. Smith a gun, and demanded money. Ms. Smith gave Butler money, which she testified was less than $400, and he left. After he ran out of the store, Ms. Smith pressed the panic button and called 911 to report the robbery. When Ms. Smith went to lock the front door, she observed Ms. Lindsey crying in her car. Ms. Lindsey had returned to her car and called 911. Ms. Lindsey gave the police a physical description of the robber and told police he was wearing a white T-shirt and jean shorts. The incident was captured by the Rent-A-Center's surveillance cameras, and still photographs were compiled from the surveillance CD.
>
> On the date of the incident, Patricia Charles ("Ms. Charles") was working at a Subway restaurant across the street from the Rent-A-Center. Lieutenant Bruce Harrison ("Lieutenant Harrison") of the Jefferson Parish Sheriff's Office was canvassing the area after the robbery and went to the Subway. He spoke with Ms. Charles, who told police that a male with a white T-shirt and blue shorts had walked into the store earlier and had just stood by the fountain drinks. Ms. Charles recalled that, while he was in the restaurant, he spoke to a female deputy wearing a Jefferson Parish Sheriff's Office uniform who came in every day to get a salad. After customers left and the male remained in the restaurant without ordering anything, Ms. Charles picked up the phone, and he ran out.
>
> The police later learned the deputy who was at the Subway was Barbara Duskin. They spoke with her, and she recalled having a conversation with Butler while she was in line on the day of the robbery at Subway at

---

[3]St. Rec. Vol. 2 of 7, Bill of Information, 10/19/06 (as amended 1/7/08).

approximately 1:20 p.m. She identified Butler by name and described him as wearing a white T-shirt and blue jean shorts.

After learning the perpetrator's name, a photographic lineup was prepared. The victims were separately shown the lineup on the same day as the robberies. Both Ms. Smith and Ms. Lindsey identified Butler as the person who robbed them. An arrest warrant was prepared for Butler, and officers went to Butler's home, knocked on the door, and announced, "Police." Before anyone opened the door of the house, the police heard a loud noise coming from the rear of the house, which proved to be Butler attempting to climb through the window. Lieutenant Harrison ran to the back and yelled for Butler to drop the gun he had in his hand. After a brief struggle, Butler dropped the gun and was handcuffed.

Sergeant John Carroll of the Jefferson Parish Sheriff's Office showed a still photograph of the robber inside of the Rent-A-Center to Butler's mother, grandmother, and a family friend. They identified Butler. The officers were given consent to search the house, but no evidence was recovered.

At the detective bureau, after Butler was advised of his rights, he stated that he committed the robbery and explained he did it to pay off a drug debt. He also identified himself in the surveillance photograph.

At trial, the State also presented evidence of Butler's prior conviction on a charge of distribution of cocaine in support of the convicted felon in possession of a firearm charge. It was stipulated that Deputy Asha Simon, a fingerprint expert, examined fingerprints taken from Butler when he was convicted of the distribution of cocaine charge, compared it to the fingerprints taken two days earlier, and found a match.

State v. Butler, 15 So.3d 1091, 1094-95 (La. App. 5th Cir. 2009); State Record Volume

7 of 7, Louisiana Fifth Circuit Court of Appeal Opinion, 08-KA-662, pages 3-5, May 26,

2009.

Butler was tried before a jury on January 8, 9 and 10, 2008, and was found guilty

as charged by unanimous verdict on all three counts.[4]   The state trial court sentenced

---

[4]St. Rec. Vol. 2 of 7, Trial Minutes, 1/8/08; Trial Minutes, 1/9/08; Trial Minutes, 1/10/08; Jury Verdict, 1/10/08; St. Rec. Vol. 3 of 7, Trial Transcript, 1/8/08; Trial Transcript, 1/9/08; St. Rec. Vol. 4 of 7, Trial Transcript (continued), 1/9/08; Trial Transcript, 1/10/08; St. Rec. Vol. 5 of 7, Trial Transcript (continued), 1/8/08; St. Rec. Vol. 6 of 7, Trial Transcript (continued), 1/8/08.

Butler on January 31, 2008, to concurrent terms of forty-nine (49) years and six months in prison on each of counts one and two to be served at hard labor and without parole, probation, or suspension of sentence.[5] The court sentenced him to a concurrent sentence of fifteen (15) years in prison on count three to be served at hard labor and without benefit of parole, probation or suspension of sentence. The court also imposed a fine of $1,000.00.

At the same hearing, the State filed a multiple offender bill charging Butler as a second felony offender in connection with the armed robbery conviction on count one.[6] Butler entered a guilty plea to the charge, and the court resentenced him on count one as a multiple offender to serve forty-nine (49) years and six months in prison at hard labor and without benefit of probation or suspension of sentence.[7]

On direct appeal of the convictions to the Louisiana Fifth Circuit, Butler's appointed counsel asserted two errors:[8] (1) The defense's challenges for cause against jurors Fredric Watson and Ismet Akinci were wrongly denied. (2) A mistrial should have been declared because the State failed to follow evidentiary and procedural rules when

---

[5]St. Rec. Vol. 2 of 7, Sentencing Minutes, 1/31/08; St. Rec. Vol. 4 of 7, Sentencing Transcript, 1/31/08.

[6]St. Rec. Vol. 2 of 7, Multiple Bill, 1/31/08; St. Rec. Vol. 4 of 7, Sentencing Transcript, 1/31/08.

[7]St. Rec. Vol. 2 of 7, Multiple Bill Sentencing Minutes, 1/31/08; Waiver of Rights - Plea of Guilty - Multiple Offender, 1/31/08.

[8]St. Rec. Vol. 4 of 7, Appeal Brief, 08-KA-662, 12/29/08.

4

it introduced new evidence from Patricia Charles not disclosed in the police report. (3) The defense was prejudiced when the third count was not severed for trial.

The Louisiana Fifth Circuit affirmed the conviction on May 26, 2009, finding the claims meritless.[9] However, the appellate court found numerous discrepancies between the sentencing transcript and the commitment order outlined in the court's minutes and remanded the matter to the lower court to correct its commitment order and minutes. The state trial court complied by reissuing its minute entries with nunc pro tunc corrections on June 22, 2009.[10]

The Louisiana Supreme Court denied Butler's subsequent writ application without stated reasons on March 5, 2010.[11] His conviction and sentence became final ninety (90) days later, on June 3, 2010, when he did not file a writ application with the United States Supreme Court. Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)), cert. denied, 529 U.S. 1099 (2000); U.S. Sup. Ct. Rule 13(1).

---

[9]Butler, 15 So.3d at 1091; St. Rec. Vol. 7 of 7, 5th Cir. Opinion, 08-KA-662, 5/26/09.

[10]St. Rec. Vol. 2 of 7, Corrected Sentencing Minutes, 6/22/09; Corrected Multiple Offender Sentencing Minutes, 6/22/09.

[11]State v. Butler, 28 So.3d 1004 (La. 2010); St. Rec. Vol. 7 of 7, La. S. Ct. Order, 2009-KO-1513, 3/5/10; La. S. Ct. Writ Application, 09-KO-1513, 7/8/09; Supplemental Brief, 09-KO-1513, 9/15/09; St. Rec. Vol. 2 of 7, La. S. Ct. Letter, 2009-KO-1513, 7/8/09 (showing postmark 6/25/09).

On October 28, 2010, Butler submitted an application to the state trial court for post-conviction relief, asserting the following grounds for relief:[12] (1) The trial court erred in denying the cause challenges to two prospective jurors. (2) The trial court erred in overruling the defense motion for a mistrial. (3) The trial court erred by erroneously denying counsel's motion for contempt. (4) He was denied effective assistance of counsel when counsel failed to file a motion for mistrial based on the State's leading questions. (5) Appellate counsel was ineffective and incompetent and prejudiced the appeal.

After the State responded, the state trial court denied Butler's application by order dated January 18, 2011, finding the first and second claims barred from review as repetitive of matters previously addressed on direct appeal, citing La. Code Crim. P. art. 930.4(C).[13] The court found the third claim barred from review pursuant to La. Code Crim. P. art. 930.4(B), (C), because it could have been raised on appeal but was not. The court also found the two ineffective assistance of counsel claims meritless under the standards of Strickland v. Washington, 466 U.S. 668 (1984), and related state and federal case law. Thereafter, on January 20, 2011, Butler moved to file a traverse to the State's

---

[12]St. Rec. Vol. 1 of 7, Uniform Application for Post-Conviction Relief, 11/4/10 (dated 10/28/10).

[13]St. Rec. Vol. 1 of 7, Trial Court Order, 1/18/11; State's Response, 1/6/11.

opposition.[14] The trial court denied the motion on February 2, 2011, finding that nothing in the traverse altered the reasons for its dismissal in the prior order.[15]

The Louisiana Fifth Circuit denied Butler's subsequent writ application in its reasoned opinion issued March 28, 2011, concluding that the first three claims were procedurally defaulted and the ineffective assistance of counsel claims were without merit.[16] The Louisiana Supreme Court denied Butler's related writ application without stated reasons on February 10, 2012.[17]

## II.    FEDERAL HABEAS PETITION

On March 14, 2014, the clerk of this court filed Butler's petition for federal habeas corpus relief in which he asserts the following grounds for relief:[18] (1) The state trial court violated his Fifth Amendment rights by denying the challenges for cause against juror Ismet Akinci. (2) He was denied effective assistance when his counsel failed to file a motion for mistrial based on the prosecutor's leading questions.

---

[14]St. Rec. Vol. 1 of 7, Motion to File Traverse, 1/20/11.

[15]St. Rec. Vol. 1 of 7, Trial Court Order, 2/2/11.

[16]St. Rec. Vol. 7 of 7, 5th Cir. Order, 11-KH-190, 3/28/11; 5th Cir. Writ Application, 11-KH-190, 2/23/11.

[17]State ex rel. Butler v. State, 80 So.3d 476 (La. 2012); St. Rec. Vol. 7 of 7, La. S. Ct. Order, 2011-KH-0795, 2/10/12; La. S. Ct. Writ Application, 11-KH-795, 4/21/11 (dated 4/18/11).

[18]Rec. Doc. No. 4.

In its response in opposition to Butler's petition, the State concedes the timely filing of the petition and exhaustion of state court remedies.[19]  The State argues that the denial of relief by the state courts was not contrary to or an unreasonable application of federal law and that the claims are without merit.  Butler replied to the State's opposition by urging the court to find that Akinci was biased and was not rehabilitated.[20]

III.  GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[21] and applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).  The AEDPA therefore applies to Butler's petition, which, for reasons discussed below, is deemed filed in this court on March 28, 2012.[22]

_____

[19]Rec. Doc. No. 12 at pp. 9-10.

[20]Rec. Doc. No. 13.

[21]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[22]The United States Court of Appeals for the Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995).  Butler's petition was filed by the clerk of this court on March 14, 2014, when the filing

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)). The State concedes and I find that the petition was timely filed and that his claims are exhausted. No procedural default has occurred as to these claims.

IV.  STANDARDS OF MERITS REVIEW

28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings. Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)), cert. denied, 532 U.S. 1039 (2001). The amended statute also

---

fee was paid almost two years after the denial of pauper status. Rec. Doc. No. 2. Butler's signature on the petition is dated March 28, 2012, which is the earliest date appearing in the record on which he could have presented his pleadings to prison officials for mailing to this court. Even though Butler delayed in paying the filing fee for almost two years, the fact that he paid the filing fee late does not alter the application of the federal mailbox rule to his pro se petition. See Cousin v. Lensing, 310 F.3d 843, 843 (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing Spotville, 149 F.3d at 374).

codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'" Penry v. Johnson, 215 F.3d 504, 507 (5th Cir. 2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir.), cert. denied, 531 U.S. 849 (2000)), aff'd in part, rev'd in part on other grounds, 532 U.S. 782 (2001); Hill, 210 F.3d at 485. The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000); Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Hill, 210 F.3d at 485. The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on

the question." (citation omitted) <u>White v. Woodall</u>, __ U.S. __, 134 S. Ct. 1697, 1706-07 (2014) (citing <u>Harrington v. Richter</u>, __ U.S. __, 131 S. Ct. 770, 787 (2011), and <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 122 (2009)). "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'" <u>White</u>, 134 S. Ct. at 1706 (quoting <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 666 (2004)).

"'A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state court decision applied [a Supreme Court case] incorrectly.'" <u>Price v. Vincent</u>, 538 U.S. 634, 641 (2003) (quoting <u>Woodford v. Visciotti</u>, 537 U.S. 19, 24-25 (2002)) (brackets in original); <u>Bell v. Cone</u>, 535 U.S. 685, 699 (2002). Rather, under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." <u>Neal v. Puckett</u>, 286 F.3d 230, 246 (5th Cir. 2002), <u>cert. denied</u>, <u>sub nom</u>, <u>Neal v. Epps</u>, 537 U.S. 1104 (2003). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. <u>Price</u>, 538 U.S. at 641 (quoting <u>Woodford</u>, 537 U.S. at 24-25); <u>Wright v. Quarterman</u>, 470 F.3d 581, 585 (5th Cir. 2006).

## V.     DENIAL OF CHALLENGE FOR CAUSE (CLAIM NO. 1)

Butler alleges that the state trial court erred in denying his counsel's challenge for cause against potential juror Ismet Akinci, who initially indicated that he could not

presume that Butler was innocent and felt that Butler should be required to testify at trial. He argues that Akinci expressed partiality and should have been removed for cause, rather than forcing his counsel to use a peremptory challenge.

Butler's appointed counsel asserted this claim on direct appeal. The Louisiana Fifth Circuit found no error in the trial court's denial of the challenge for cause against Akinci, ruling that the trial court's further inquiry after the prospective juror's initial responses rehabilitated Akinci and established that he would be impartial and willing to apply the law and presumption of innocence as instructed. This was the last reasoned opinion on the issue.[23]

The Due Process Clause guarantees an accused the Sixth Amendment right to an impartial jury that will determine guilt based on the evidence and the law as instructed, rather than on preconceived notions or extraneous information. Morgan v. Illinois, 504 U.S. 719, 726-27 (1992); Patton v. Yount, 467 U.S. 1025, 1037 & n.12 (1984). While determination of a jury's impartiality as a whole is a mixed question of law and fact, Irvin v. Dowd, 366 U.S. 717, 723 (1961), a trial court's finding of non-bias and impartiality of a single juror is a question of fact that is accorded the "presumption of

---

[23]On state post-conviction review, the claim was barred under La. Code Crim. P. art. 930.4(A) which precludes post-conviction review of claims already "fully litigated" on direct appeal. Bennett v. Whitley, 41 F.3d 1581 (5th Cir. 1994). The presumption in the rule is that the claims were not new or different from something previously litigated and resolved on appeal. Id., at 1583. However, "the bar imposed by article 930.4(A) is not a procedural bar in the traditional sense, nor is it a decision on the merits." Id. This court simply "look[s]-through" the ruling on collateral review and considers only the direct appeal proceeding. Id., at 1582-83.

correctness" under 28 U.S.C. § 2254(d). <u>Williams v. Cockrell</u>, 46 F. App'x 227, 2002 WL 1940099, at *7 (5th Cir. Jul. 25, 2002) (citing <u>Jones v. Butler</u>, 864 F.2d 348, 362 (5th Cir. 1988) (quoting pre-AEDPA 28 U.S.C. § 2254(d)(8)); <u>Oliver v. Quarterman</u>, 541 F.3d 329, 342 (5th Cir. 2008); <u>see also</u>, <u>Patton</u>, 467 U.S. at 1036-37 & n.12 (under pre-AEDPA law, the state trial court's finding of juror impartiality is entitled to a presumption of correctness). The state courts' "finding of impartiality is therefore 'presumed correct' unless it is 'not fairly supported' by the record viewed 'as a whole.'" <u>Jones</u>, 864 F.2d at 362 (quoting pre-AEDPA Section 2254(d)(8)). The habeas petitioner has the burden of rebutting this presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Butler has not met this burden.

Butler claims that he was denied a fair and impartial jury because the state trial court denied his challenge for cause to exclude Akinci, which forced his counsel to use a peremptory challenge to exclude him. The Supreme Court has "reject[ed] the notion that the loss of a peremptory challenge constitutes a violation of the constitutional right to an impartial jury." <u>Ross v. Oklahoma</u>, 487 U.S. 81, 88 (1988). Instead, after the denial of a challenge for cause, when the challenged juror is removed by use of a peremptory challenge, the petitioner is entitled to federal habeas corpus relief <u>only</u> if he demonstrates that the jury ultimately selected to try the case was not impartial. <u>Id</u>., 487 U.S. at 85-86, 88-89; <u>Rivera v. Illinois</u>, 556 U.S. 148, 158-59 (2009); <u>Soria v. Johnson</u>, 207 F.3d 232, 241 (5th Cir. 2000); <u>Williams</u>, 2002 WL 1940099, at *5-*6. "So long as

the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated." Ross, 487 U.S. at 88 (citations omitted).

Butler does not allege or establish that the jury ultimately selected for his trial was anything other than impartial. He complains only that his counsel had to use a peremptory challenge to exclude Akinci, who should have been dismissed for cause. His claim based on this theory alone fails to state any basis for federal habeas relief. Soria, 207 F.3d at 241-42; Dorsey v. Quarterman, 494 F.3d 527, 533 (5th Cir. 2007); Lagrone v. Cockrell, No. 02-10976, 2003 WL 22327519, at *12 (5th Cir. Sep. 2, 2003).

As for the denial of the challenge for cause itself, "refusal to grant a challenge for cause is within the discretion of the trial court, and it does not provide a basis for habeas corpus relief unless the disqualifying fact was so prejudicial that the refusal deprived the petitioner of a fundamentally fair trial." Sudds v. Maggio, 696 F.2d 415, 416 (5th Cir. 1983) (citation omitted). "The standard for determining when a venire member may be excluded for cause is whether the prospective juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." Soria, 207 F.3d at 242 (quoting Wainwright v. Witt, 469 U.S. 412, 424 (1985)). Implicit in a state court's denial of a challenge for cause is a finding that the juror was not biased. Jones, 864 F.2d at 362; Miniel v. Cockrell, 339 F.3d 331, 338-39 (5th Cir. 2003); Montoya v. Scott, 65 F.3d 405, 419 n.29 (5th Cir. 1995); see also

Fuller v. Johnson, 114 F.3d 491, 500-01 (5th Cir. 1997). A juror is considered biased if he unequivocally states during voir dire that he cannot be fair and impartial. Virgil v. Dretke, 446 F.3d 598, 613 (5th Cir. 2006). A trial judge should normally undertake an assessment of any bias by questioning the juror directly, with the participation and input of counsel. See Smith v. Phillips, 455 U.S. 209, 217 (1982) ("Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen."); Hatten v. Quarterman, 570 F.3d 595, 600 (5th Cir. 2009). As outlined above, the United States Supreme Court has made clear that "deference must be paid to the trial judge who sees and hears the juror." Wainwright, 469 U.S. at 426.

Butler asserts that the state trial court erred in denying his counsel's challenge for cause against Akinci because of the prospective juror's alleged inability to be impartial. However, the record fully supports the state courts' finding that there was no basis to sustain the challenge for cause. Akinci was a member of the first panel of potential jurors.[24] The state trial court asked all prospective jurors to provide general information about themselves, including their address, marital status and employment, and to answer

---

[24]St. Rec. Vol. 5 of 7, Trial Transcript (continued), p. 50, 1/8/08.

any additional questions by the court and counsel.[25]  Akinci identified himself as a social worker who is Muslim, married with children and a native of Turkey. He had never served on a jury and neither he nor any member of his family had been the victim of a crime.  He specifically answered "no" when asked if there was any reason why he could not serve as a fair and impartial juror.[26]  He also agreed that he would look to the proof offered by the State to determine the elements of the crimes charged.[27]  Akinci agreed that he would treat police officers just like any other witnesses in determining their credibility.[28]

During voir dire by defense counsel, the following exchange occurred with Akinci:[29]

> MR. WILLIAMS:
>        . . . Mr. Akinci, how about you?  Can you follow the law or do you feel that he must have done something wrong? . . . The arrest, the charges, being on trial doesn't mean nothing until you're convinced that he committed the crime.  Can you follow that law?
> PROSPECTIVE JUROR ISMET AKINCI:
>        I can follow the law, but I don't want to hurt his feelings.  Right now I don't want to say guilty or not guilty.

---

[25]Id., pp. 52.

[26]Id., p. 63.

[27]Id., p. 98.

[28]Id., pp. 116, 161.

[29]Id., p. 144.

MR. WILLIAMS:

Okay.

PROSPECTIVE JUROR ISMET AKINCI:

Has to be listen to him to see, because he should make the crime real guilty, you know.

MR. WILLIAMS:

Of course.  So, you're saying right now, you can't give him the presumption of innocence?

PROSPECTIVE JUROR ISMET AKINCI:

Right now.  Not right now, because I have to see, really.

Defense counsel next asked each of the prospective jurors if they would not hold it against Butler if he did not testify.[30]  On his turn, Akinci responded as follows:[31]

PROSPECTIVE JUROR ISMET AKINCI:

I hope he will testify.  If he's not, that's out of the question.  I will question myself.

MR. WILLIAMS:

Okay.  Would you hold - - can you tell me, and this is the bottom line question: Can you tell me with 100 percent certainty that if he didn't testify, that you wouldn't hold it against him?

PROSPECTIVE JUROR ISMET AKINCI:

Of course, I will, because he is supposed to admit it, he's supposed to testify.

MR. WILLIAMS:

Okay.  That probably didn't answer it.  So, you're telling me if he doesn't testify, you're going to hold it against him?

PROSPECTIVE JUROR ISMET AKINCI:

Right.

After defense counsel asserted a challenge for cause based on this colloquy, the

court questioned Akinci at the bench about the law regarding a defendant's decision not

---

[30]Id., pp. 151-52.

[31]Id., pp. 157-58.

to testify and if he understood that decision could <u>not</u> be held against the defendant.[32]  He

answered "if the law say no, still I'm not sure."[33]

The district attorney then asked Akinci if he understood that the law is that a

defendant does not have to take the stand, and Akinci answered "yes."[34]  He also affirmed

his understanding that the State had the burden to prove a defendant's guilt and that the

defendant "did not have to do anything."[35]  Akinci explained, "I could follow the law, but

then my personal belief, sometimes you have to come to say what is going on."[36]  In

response, the district attorney asked the following question:[37]

> MS. SWAIM:
> And even though that's your personal belief, and you deserve every right to have that personal belief; if chosen as a juror could you follow the law and judge our case as to what we present even if he doesn't take the stand? Not what you would do, because that's okay that you would do that.
> But you understand that he doesn't have to do that?
> PROSPECTIVE JUROR ISMET AKINCI:
> Sure, that time I understand the law.

---

[32]<u>Id</u>., p. 177.

[33]<u>Id</u>., p. 178.

[34]<u>Id</u>

[35]<u>Id</u>., pp. 178-79.

[36]<u>Id</u>., p. 179.

[37]<u>Id</u>

Akinci immediately repeated, "I could do . . . I can follow the law."[38]  To further

clarify and assure that Akinci meant he would adhere to the law, the court engaged him

in the following exchange:[39]

> THE COURT:
> Okay.  I'm not sure I understand if you're clear on this because I'm not sure what you're telling us.  You said that you have some personal beliefs?
> PROSPECTIVE JUROR ISMET AKINCI:
> I have a personal belief, yes.
> THE COURT:
> And you believe that someone charged with a crime should take the stand and tell us what they did?
> PROSPECTIVE JUROR ISMET AKINCI:
> They should do that, yes.  That's my personal belief.
> THE COURT:
> That's your personal belief?
> PROSPECTIVE JUROR ISMET AKINCI:
> But the law say that I might - -
> THE COURT:
> The law says he doesn't have to.
> PROSPECTIVE JUROR ISMET AKINCI:
> And I respect the law.
> THE COURT:
> Okay.  Once you hear all the evidence and testimony, when you make the decision if the Defendant does not take the stand, would that become a part of your decision making process?
> Would you hold that against the Defendant?
> PROSPECTIVE JUROR ISMET AKINCI:
> No, I would not.  If the law say no, I'm not holding him.  But my personal belief - - if the law say no.
> THE COURT:
> You would follow the law?

---

[38]Id., p. 180.

[39]Id., pp. 180-81.

PROSPECTIVE JUROR ISMET AKINCI:
      Yes, I follow the law.

Defense counsel thereafter argued that Akinci was not rehabilitated and retained his personal belief that the defendant had to testify.[40]  The district attorney argued that every juror maintained their own beliefs, and Akinci said he would follow the law.[41]  The court overruled the challenge for cause and found that Akinci understood the distinction between his personal beliefs and his obligation under the law and repeated that he would follow the law.[42]  Defense counsel later used a peremptory challenge to exclude Akinci from the jury.[43]

In denying the challenge for cause, the trial court considered all of the comments made by Akinci as a whole.  The court found that once he received further explanation, Akinci demonstrated that he would follow the law that a defendant's decision not to take the stand could not be held against him.  These findings were given deference and affirmed by the Louisiana Fifth Circuit on direct appeal, in which the appellate court also found on its own review of the record that Akinci was "rehabilitated and demonstrated

---

[40]Id., p. 182.

[41]Id.

[42]Id., p. 183.

[43]Id., p. 208.

an ability and willingness to decide the case impartially according to the law and evidence."[44]

The trial record supports the state courts' findings that Akinci ultimately established his ability to be fair and impartial, in that he could abide by the law regarding Butler's decision not to testify and render a verdict based solely on the law and evidence. "A potential juror may be rehabilitated by counsel or the court; if it becomes apparent that the juror could follow the law in accordance with his oath and the court's instructions, denial of a challenge for cause would be proper, and the challenged venireman could serve on the jury." Chappell v. Cockrell, 37 F. App'x 88, 2002 WL 971530, at *11 (5th Cir. Apr. 29, 2002). The state courts' determination that Akinci had in fact been rehabilitated and could be fair and impartial is supported by the record and is entitled to deference in this court.

Butler has not demonstrated that Akinci had "such fixed opinions that [he] could not judge impartially the guilt of the defendant." Patton, 467 U.S. at 1035; Chavez v. Cockrell, 310 F.3d 805, 811 (5th Cir. 2002). The record instead demonstrates that, while Akinci first indicated that he wanted to hear Butler testify, he ultimately voiced his understanding that the right not to testify was the law and that decision could not be held against Butler. Akinci also indicated that he would base his verdict solely on the evidence and require the State to meet its burden of proof on each element of the crime. He

---

[44]Butler, 15 So.3d at 1098; St. Rec. Vol. 7 of 7, 5th Cir. Opinion, 08-KA-662, pp. 10-11, 5/26/09.

ultimately affirmed for the state trial court that he would follow the law as instructed, even if that meant that the defendant had the right not to testify.

The factual finding concerning the juror's impartiality and commitment to follow the law and the denial of the challenge for cause by the state trial court based on those findings were fully supported by the record and are entitled to deference. The state courts' denial of relief was not contrary to or an unreasonable application of Supreme Court precedent. Butler is not entitled to federal habeas relief on this claim.

## VI.    EFFECTIVE ASSISTANCE OF COUNSEL (CLAIM NO. 2)

Butler argues that his trial counsel provided ineffective assistance when he failed to move for a mistrial based on the State's use of leading questions posed to its own witnesses. Butler concedes that his counsel successfully urged numerous objections to the district attorney's leading questions throughout the trial. He also recognizes that his counsel moved to have the district attorney held in contempt for the continued improper form of her questions, although that motion was denied. He argues, however, that counsel should have moved for a mistrial based on the State's prejudicial pattern of leading questions during testimony regarding crucial elements of the armed robberies.

Butler raised this issue in the state courts on post-conviction review. Relying on the standards set forth in Strickland, the state trial court summarily found the claim speculative and conclusory and noted that the motion for contempt was denied by the trial judge. On its review, the Louisiana Fifth Circuit found that Butler failed to establish

that counsel's representation was unreasonable or that, but for counsel's actions, the outcome of the proceeding would have been different. The court found that defense counsel had acted reasonably when he lodged objections and moved for contempt.

The issue of ineffective assistance of counsel is a mixed question of law and fact. Clark v. Thaler, 673 F.3d 410, 416 (5th Cir. 2012); Woodfox v. Cain, 609 F.3d 774, 789 (5th Cir. 2010). Thus, the question before this court is whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

The standard for judging the performance of counsel was established by the United States Supreme Court in Strickland, 466 U.S. at 688, in which the Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel, requiring petitioner to prove both deficient performance and resulting prejudice. Id., 466 U.S. at 697. The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id., at 687-88. Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id., at 694; United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999).

In deciding ineffective assistance of counsel claims, this court need not address both prongs of the conjunctive Strickland standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. Kimler, 167 F.3d

at 893. A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' . . . But it is not enough under Strickland, 'that the errors had some conceivable effect on the outcome of the proceeding.'" (citation omitted) Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir. 1994) (quoting Strickland, 466 U.S. at 693); Harrington, 131 S. Ct. at 792 (Strickland requires a "substantial" likelihood of a different result, not just "conceivable" one.)

On habeas review, the United States Supreme Court has clarified that, under Strickland, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." Harrington, 131 S. Ct. at 788. The Harrington Court went on to recognize the high level of deference owed to a state court's findings under Strickland in light of the AEDPA:

> The standards created by Strickland and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is doubly so. The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Harrington, 131 S. Ct. at 788.

Thus, scrutiny of counsel's performance under Section 2254(d) is "doubly deferential." Cullen v. Pinholster, __ U.S. __, 131 S. Ct. 1388, 1403 (2011) (quoting Knowles, 556 U.S. at 123). This court must therefore apply the "strong presumption"

that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 690; Moore v. Johnson, 194 F.3d 586, 591 (5th Cir. 1999).

Federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise by the petitioner. Id., 466 U.S. at 689; Geiger v. Cain, 540 F.3d 303, 309 (5th Cir. 2008); Moore, 194 F.3d at 591. In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial. Id., 466 U.S. at 689; Neal, 286 F.3d at 236-37; Clark v. Johnson, 227 F.3d 273, 282-83 (5th Cir. 2000), cert. denied, 531 U.S. 1167 (2001). Tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance. Lamb v. Johnson, 179 F.3d 352, 358 (5th Cir. 1999), cert. denied, 528 U.S. 1013 (1999) (citing Rector v. Johnson, 120 F.3d 551, 564 (5th Cir. 1997) and Mann v. Scott, 41 F.3d 968, 983-84 (5th Cir. 1994)).

As noted by the parties, defense counsel asserted at least ten (10) successful objections during trial to the prosecution's use of leading questions, mostly during the direct examination of Sergeant John Carroll.[45] Likewise, the State entered at least

---

[45]See, e.g., St. Rec. Vol. 4 of 7, Trial Transcript (continued), pp. 29, 37, 50, 51, 68, 150, 154, 155-56, 161-62, 191, 1/9/08; Trial Transcript, p. 45, 1/10/08.

eight (8) successful objections to defense counsel's questions posed to the State's witnesses, including Carroll.[46] The quantity of objections alone, however, is not determinative of the constitutionality of counsel's performance. The reasonableness of counsel's decision not to move for mistrial is the more significant issue raised by Butler.

During questioning of Sergeant Carroll, defense counsel became frustrated with the style of questions posed by the assistant district attorney. Butler's counsel called for a conference at the bench which led to the following exchange:[47]

> MR. WILLIAMS (defense counsel):
>      That's the tenth time that there's been a "correct" at the end of the sentence, and she keeps doing it. It's just got to stop.
> MS. SWAIM (assistant district attorney):
>      And, Judge, I mean - -
> MR. WILLIAMS:
>      I mean - - but it's - -
> MS. SWAIM:
>      I haven't been objecting when he's made a leading question. But that's fine. I won't use "correct" again.
> MR. WILLIAMS:
>      Because that was cross-examination. And I just - - I don't know what else to do.
> THE COURT:
>      He's not under cross. He's under direct. So please phrase your questions not to be leading.

Later, during the questioning of the same witness, defense counsel again objected to the assistant district attorney's leading question and asked to make a motion outside

---

[46]See, e.g., St. Rec. Vol. 4 of 7, Trial Transcript (continued), pp. 97 (argumentative), 128 (leading), 169 (reference to sentencing range), 170 (called for speculation), 172 (repetitive), 183 (called for speculation), 185 (vagueness), 190 (interrupted witness's answer), 1/9/08.

[47]St. Rec. Vol. 4 of 7, Trial Transcript (continued), p. 155, 1/9/10.

of the presence of the jury.[48]  At the bench conference, counsel moved to have the

assistant district attorney held in contempt, because his "objections aren't doing any good

anymore. . ."[49]  The assistant district attorney acknowledged that she said she should not

use "correct" in her questions and claimed that she did not intentionally disobey the

court's directive.  Butler's counsel stated that the assistant district attorney's fast-paced

and machine-like questioning style was unnecessarily leading the officer, and he did not

want to keep objecting to "make the jury upset with [him]."  Although the court denied

the motion for contempt, the judge instructed the assistant district attorney to phrase her

questions so as not to lead and not use the word "correct."  The record reflects that,

throughout the remainder of the trial, counsel made only one more objection to the

assistant district attorney's use of a leading question on re-direct of Sergeant Carroll.[50]

Butler appears to argue that his counsel erred when he admittedly did not object

to all of the State's leading questions.  "However, failure to object to leading questions

and the like is generally a matter of trial strategy as to which we will not second guess

counsel."  Burnett v. Collins, 982 F.2d 922, 930 (5th Cir. 1993).  Moreover, the record

suggests that if defense counsel had objected to every possible leading question, the trial

---

[48]Id., pp. 161-163.

[49]Id., p. 162.

[50]Id., p. 191. One final objection to a leading question by the other assistant district attorney was
made during the last day of trial. St. Rec. Vol. 4 of 7, Trial Transcript, p. 45, 1/10/08.

judge simply would have instructed the prosecutor to rephrase the question, as he did in other instances.

Butler further contends that his counsel erred in failing to move for a mistrial based on the number of leading questions posed by the assistant district attorney. The record shows that defense counsel made relevant objections when necessary and urged cogent argument to the court regarding the assistant district attorney's questioning style. His motion for contempt apparently was successful in that it put a virtual end to the leading questions posed by the State. Thus, counsel's action achieved the desired goal and allowed the trial to continue smoothly and fairly. Such a "'conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.'" Johnson v. Dretke, 394 F.3d 332, 337 (5th Cir. 2004) (quoting United States v. Jones, 287 F.3d 325, 331 (5th Cir. 2002)); see Lamb, 179 F.3d at 358 ("Informed strategic decisions of counsel are given a heavy measure of deference and should not be second guessed."); Yohey v. Collins, 985 F.2d 222, 228 (5th Cir. 1993) ("Given the almost infinite variety of possible trial techniques and tactics available to counsel, this Circuit is careful not to second guess legitimate strategic choices.").

Counsel's decision not to seek a mistrial was a strategic one. Geiger v. Cain, 540 F.3d 303, 309-10 (5th Cir. 2008) (citing Ward v. Dretke, 420 F.3d 479, 491 (5th Cir. 2005) (in deciding not to move for mistrial, counsel must balance the harm caused by the

prosecutor's improper question against the possible implications of a new trial). Counsel's decision to move for contempt, rather than some harsher relief like mistrial, was reasonable strategy under the circumstances.

Based on the denial of the motion for contempt, the record contains no indication that the trial court would have granted the more severe and disruptive sanction of mistrial if such a motion had been urged by counsel. Counsel frequently objected when the prosecutor asked a leading question and asserted other objections, including improper form, argumentative nature and relevance. The trial court sustained some objections and overruled others, which channeled the evidence before the jury in a fair and proper manner. Even though the State posed leading questions, the court did not find the behavior contemptible. It is highly unlikely that the court would have found it sufficiently prejudicial to warrant a mistrial. Nothing in the record, and no argument by Butler, establishes that, absent counsel's alleged error, the trial court would have granted a mistrial or that "there is a reasonable probability that . . . the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

Butler has not demonstrated that his counsel's performance was deficient or prejudicial under the applicable federal constitutional standard. The state courts' denial of relief on this issue was not contrary to or an unreasonable application of Strickland. Butler is not entitled to relief on this issue.

## RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that Butler's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[51]

New Orleans, Louisiana, this _____15th_____ day of September, 2014.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[51]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.